IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MONIQUE LUKENS**, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**UNIVERSITY OF PENNSYLVANIA**,<br><br>　　　　　Defendant. | :<br>:<br>:<br>: CASE NO: _____<br>:<br>:<br>:<br>:<br>:<br>: |

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Defendant The Trustees of the University of Pennsylvania[1] ("Penn" or "Defendant"), by and through its undersigned counsel, and pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, hereby removes this action from Court of Common Pleas of Philadelphia County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania. Removal is based on the following grounds:

### JURISDICTION AND VENUE

1. This Court has original jurisdiction over this civil action under 28 U.S.C. § 1332(d)(2). This action is therefore removable pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453(b). This is a class action in which the alleged size of the proposed class exceeds 100 members, there is a diversity of citizenship between at least one member of the putative class of plaintiffs and the defendants, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

---

[1] The Complaint in this action incorrectly names the defendant as "University of Pennsylvania" or "UPenn, Inc." *See* Compl. ¶ 17. There is no such entity. The appropriate defendant in this case is The Trustees of the University of Pennsylvania, which is the legal entity through which the University of Pennsylvania operates.

1

2. Removal to this Court is proper because the U.S. District Court for the Eastern District of Pennsylvania embraces the Court of Common Pleas of Philadelphia County, Pennsylvania, where Plaintiff Monique Lukens ("Plaintiff") filed this action. *See* 28 U.S.C. §§ 118(a), 1441(a).

## PROCEDURAL HISTORY

3. On November 12, 2025, Plaintiff filed this putative class action, *Lukens v. University of Pennsylvania*, No. 251101759, in the Court of Common Pleas of Philadelphia County, Pennsylvania. *See* **Exhibit A** (Complaint and Notice to Defend).

4. On behalf of herself and a putative class, Plaintiff asserts claims against Penn for negligence, negligence *per se*, breach of implied contract, unjust enrichment, and breach of fiduciary duty. *See* Compl. ¶¶ 104–64.

5. This action arises from the alleged exposure to unauthorized third parties of sensitive "Private Information" or "PII" in Penn's possession belonging to Plaintiff and members of the putative class. *See* Compl. ¶¶ 1, 3. Plaintiff alleges this information was collected by Penn "at the time of application, enrollment, and subsequently as part of [Penn's] alumni relations efforts, with the understanding that [Penn] would keep that information private in accordance with both state and federal laws." *Id.* ¶ 4. Plaintiff alleges that this information was accessed by unauthorized third parties on October 31, 2025, but that the intrusion was publicly announced by Penn on November 4, 2025. *Id.* ¶¶ 5–6.

6. Plaintiff defines the putative class as "[a]ll persons in the United States whose Private Information was compromised in the Defendant's Data Breach announced to the public on or about November 4, 2025." *Id.* ¶ 91.

7. On behalf of herself and the putative class, Plaintiff seeks "[a]n award of damages, including actual, nominal, consequential damages, and punitive, as allowed by law in an amount

to be determined," as well as "attorneys' fees, costs, and litigation expenses, as allowed by law," and "pre- and post-judgment interest, costs, attorneys' fees, expenses, and interest as permitted by law." Compl., Prayer for Relief, ¶¶ E–G. As one "element" of her claimed damages, Plaintiff seeks on behalf of herself and the putative class "a sum of money sufficient to provide to Plaintiff and Class Members identity theft protection services for their respective lifetimes." *Id.* ¶ 29.

8. Plaintiff also seeks an order requiring Penn to "adequately safeguard the PII of Plaintiff and the Class hereinafter" by adopting or refraining from thirteen specified measures, including the following:

(a) To "implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' PII";

(b) To "engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis";

(c) To no longer "maintain[] Plaintiffs' and Class Members' PII on a cloud-based database until proper safeguards and processes are implemented";

(d) To "segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems";

(e) To "conduct regular database scanning and securing checks";

(f) To "monitor ingress and egress of all network traffic";

(g) To "establish an information security training program that includes at least annual information security training for all employees, with additional training to

3

        be provided as appropriate based upon the employees' respective responsibilities with handling PII, as well as protecting the PII of Plaintiff and Class Members";

(h)    To "implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information";

(i)    To "implement, maintain, review, and revise as necessary a threat management program to appropriately monitor Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested, and updated"; and

(j)    To "meaningfully educate all Class Members about the threats that they face because of the loss of its confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves."

Compl., Prayer for Relief, ¶¶ B(iv)–(xiii).

9.    Additionally, Plaintiff seeks an order requiring Penn to "provide notice to each member of the Class relating to the full nature and extent of the Data Breach and the disclosure of PII to unauthorized persons." *Id.*, ¶ C.

10.    On November 14, 2025, Plaintiff served a copy of the Complaint and Notice to Defend on Penn. *See* **Exhibit B** (Affidavit of Service).

11.    This Notice of Removal is timely because it is filed within thirty days of service of the Complaint, which occurred on November 14, 2025. *See* 28 U.S.C. § 1446(b)(1).

**GROUNDS FOR REMOVAL**

12.    This Court has original jurisdiction over this action under CAFA because (a) the putative class includes more than 100 members; (b) there is minimal diversity of citizenship; and

(c) the amount in controversy exceeds $5,000,000.  *See* 28 U.S.C. § 1332(d).  No exception to CAFA jurisdiction applies.

*Class Size*

13. CAFA requires that "the number of members of all proposed plaintiff classes in the aggregate" is 100 or greater.  28 U.S.C. §§ 1332(d)(2), (d)(5)(b).

14. Plaintiff alleges that "[w]hile the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of tens of thousands [of] individuals."  *See* Compl. ¶ 96.

15. For purposes of removal, Penn may rely on Plaintiff's allegation regarding the size of the proposed class.[2]  *See Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 505 (3d Cir. 2014) ("Because Judon explicitly asserted in her complaint that there are 'hundreds of [class] members,' Travelers was entitled to rely on this fact as an admission in favor of jurisdiction.").

16. Accordingly, this action satisfies CAFA's numerosity requirement.

*Minimal Diversity of Citizenship*

17. CAFA requires minimal diversity of citizenship, meaning that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

18. Plaintiff alleges that she is a citizen of California.  Compl. ¶ 16.

19. Plaintiff further seeks to represent a putative nationwide class of "[a]ll persons in the United States" who provided information to Penn in the process of "obtain[ing] education[al] services" and subsequently had that information allegedly compromised in the breach disclosed on or about November 4, 2025.  *See id.* ¶¶ 19, 91.

---

[2] While Penn is entitled to rely on the allegations in the Complaint for purposes of establishing removal jurisdiction under CAFA, Penn does not concede that there are in fact "tens of thousands" of potential class members under the definition proposed in the Complaint.

20.     Pursuant to 28 U.S.C. § 1332, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

21.     Defendant The Trustees of the University of Pennsylvania[3] is a nonprofit corporation incorporated under the laws of Pennsylvania with its principal place of business at 3451 Walnut Street, Philadelphia, Pennsylvania 19104.  Accordingly, under both the incorporation and principal place of business tests, Penn is a citizen of Pennsylvania.

22.     Because at least one putative class member—at the very least, Plaintiff herself—is a citizen of a state other than Pennsylvania, there is diversity of citizenship between at least one plaintiff and one defendant.  CAFA's minimal diversity requirement is satisfied.  28 U.S.C. § 1332(d)(2)(C).

### *Amount in Controversy*

23.     CAFA requires that the aggregate amount placed in controversy by the action, exclusive of interest and costs, "exceeds the sum or value of $5,000,000."  28 U.S.C. §§ 1332(d)(2), (6).  Even when a plaintiff seeks injunctive relief, "courts must put a value on the relief sought when deciding whether the $5 million amount-in-controversy requirement is satisfied."  *Excel Pharmacy Servs., LLC v. Liberty Mut. Ins. Co.*, 825 F. App'x 65, 68 (3d Cir. 2020) (citing *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 539 (3d Cir. 1995)).  "The value of injunctive relief is also calculated into the amount in controversy, 'measured by the value of the right sought to be protected by the equitable relief.'"  *Lenell v. Advanced Mining*

---

[3] As described above, the Complaint incorrectly names the defendant in this case as "University of Pennsylvania" or "UPenn, Inc.," rather than the proper entity The Trustees of the University of Pennsylvania.  *See supra* note 1.  Despite this error, nothing in the Complaint indicates that Penn is a citizen of any state other than Pennsylvania (as in fact it is not) for purposes of diversity under CAFA.

*Tech., Inc.*, No. 14-cv-01924, 2014 WL 7008609, at *3 (E.D. Pa. Dec. 11, 2014) (quoting *Barbiero v. Kaufman*, 580 F. App'x 107, 110 (3d Cir. 2014)).

24. Based on Plaintiff's allegations of "tens of thousands" of class members, *see* Compl. ¶ 96, the Complaint "implies a logical minimum" of at least 20,000 class members in this case. *See McLaren v. UPS Store Inc.*, 32 F.4th 232, 237 (3d Cir. 2022) (quoting *Kuxhausen v. BMW Fin. Servs., NA, LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013)).

25. Among her other requested relief, Plaintiff seeks on behalf of herself and the putative class "a sum of money sufficient to provide to Plaintiff and Class Members identity theft protection services for their respective lifetimes." Compl. ¶ 29. In other data breach cases, courts (including this Court) have found similar demands for costs associated with credit and fraud monitoring to satisfy CAFA's amount-in-controversy requirement. *See Rauhala v. Greater N.Y. Mut. Ins., Inc.*, No. 22-1788, 2022 WL 16553382, at *2 n.17 (E.D. Pa. Oct. 31, 2022) ("The aggregate amount in controversy exceeds $5 million because [the plaintiff's] request for at least five years of credit monitoring services for the class would cost more than $20 million."); *Castillo v. Berry Bros. Gen. Contractors Inc.*, No. 6:24-CV-01723, 2025 WL 1062091, at *2 (W.D. La. Apr. 8, 2025) (noting the cost of credit monitoring from TransUnion alone is $29.95 per month, and thus ten years of credit monitoring for 6,210 alleged class members more than satisfied CAFA's $5,000,000 threshold); *Linman v. Marten Transp., Ltd.*, No. 22-cv-204-jdp, 2023 WL 2562712, at *2 (W.D. Wis. Mar. 17, 2023) (citing *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694 (7th Cir. 2015)) (finding that because "[t]he Seventh Circuit has observed in other cases involving data breaches that credit monitoring services can cost up to $19.95 a month," it was "plausible" that the value of credit monitoring alone could exceed $5,000,000 for a class of 35,000 members).

26. Under a highly conservative estimate of $19.95 per month per class member, the aggregate value of credit monitoring services for 20,000 class members is $399,000 per month. The $5,000,000 amount-in-controversy threshold is therefore met by the value of merely 13 months of credit monitoring services for the minimum alleged 20,000 class members ($399,000/month x 13 months = $5,187,000), let alone the lifetime protection sought in the Complaint. *See* Compl. ¶ 29. The value of the demanded class-wide credit monitoring services alone thus satisfies CAFA's amount-in-controversy requirement.

27. Among her other relief, Plaintiff also seeks to recover for injuries related to the value of the putative class's PII, and to require Penn to undertake extensive efforts to "adequately safeguard the PII of Plaintiff and the Class hereinafter." *See* Compl. ¶ 10, Prayer for Relief, ¶ B. According to the Complaint, "stolen PII . . . can be worth up to $2,000.00 depending on the type of information obtained." *Id.* ¶ 41. Applying the Complaint's $2,000 figure across the 20,000 minimum number of class members indicates that the value of the putative class's PII (and thus the measure of potential damages and the value of injunctive relief to protect the putative class's PII going forward) is potentially as much as $40,000,000, far exceeding the $5,000,000 amount in controversy requirement.

28. Accordingly, CAFA's amount-in-controversy requirement is easily satisfied. 28 U.S.C. § 1332(d)(2).

**OTHER MATTERS**

29. In accordance with 28 U.S.C. § 1446(d), Penn will promptly provide written notice to Plaintiff, through counsel, of the removal of this action, and will also file a copy of this Notice of Removal with the Office of Judicial Records of the Court of Common Pleas of Philadelphia County, Pennsylvania.

30.     If any question arises as to the propriety of the removal of this action, Penn respectfully requests the opportunity to provide evidence in support of its position that this case is subject to removal.

31.     If this Court determines that the Complaint and other documents to date lack adequate information from which to ascertain the prerequisites to jurisdiction under CAFA, Penn reserves the right to remove this action at the appropriate time. *See Judon*, 773 F.3d at 509 (citing 28 U.S.C. § 1446(b)(3); *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 210–11 (3d Cir. 2014)) ("In the event Travelers is unsuccessful in establishing CAFA jurisdiction during the early stages of this action, Travelers may still re-remove the case to federal court if new facts are established that establish jurisdiction.")).

32.     Penn reserves all defenses and objections it may have to this action, without conceding any of the allegations of the Complaint or that Plaintiff has pleaded claims upon which relief may be granted.

WHEREFORE, for the reasons set forth above, Penn respectfully requests that the above-captioned action, now pending in the Court of Common Pleas of Philadelphia County, Pennsylvania, be removed to the United States District Court for the Eastern District of Pennsylvania.

Dated: December 4, 2025                    Respectfully submitted,

/s/ *Gregory T. Parks*
Gregory T. Parks
Kristin M. Hadgis
Terese M. Schireson
Shawn F. Summers
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103-3007
Tel: (215) 963-5000
Fax: (215) 963-5001
gregory.parks@morganlewis.com
kristin.hadgis@morganlewis.com
terese.schireson@morganlewis.com
shawn.summers@morganlewis.com

*Counsel for Defendant The Trustees of the University of Pennsylvania*